## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**VINCENT ROBERT BARBIERI,**
      **Petitioner,**

**v.**                            **Case No.:  5:04cv10/LAC/MD**

**JAMES V. CROSBY,**
      **Respondent.**
_____/

## REPORT AND RECOMMENDATION

      **Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent has filed a response (doc. 11) to which petitioner has replied (doc. 18).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that petitioner is not entitled to relief, and that the petition is without merit and should be denied.**

## BACKGROUND AND PROCEDURAL HISTORY

      **On June 13, 2000 petitioner pleaded no contest in three cases, Case No. 99-2482, 99-2483, and 99-2484, in the Circuit Court for Bay County, Florida.  He now claims his pleas were involuntary because his lawyer was unprepared for trial and gave erroneous advice on the possibility of petitioner receiving an enhanced sentence as an habitual offender, among other failings.  He also contends that the**

trial court further confused the matter because it failed to fully apprise him of the charges and possible maximum sentences.  For purposes of clarity, the court will first describe the three different cases, noting some pertinent legal and factual issues that will be discussed more fully below.

### The Trailer Case  – Case No. 99-2482

In April of 1999 Sarah Walker was arrested for narcotics violations and provided law enforcement with information that petitioner was selling drugs.  An officer signed an application for a search warrant based on this information, and a state circuit judge issued a search warrant.  The warrant affidavit stated that the officer had arrested Ms. Walker and she wanted to cooperate; that she had been an invited guest in petitioner's trailer on numerous occasions; and that while present she and several others had purchased and/or used several different illegal drugs (*see* ex. A, p.165).[1]  The affidavit further stated that a search of the records disclosed that petitioner had eight prior convictions for drug offenses,[2] and that the electrical power to the trailer was in petitioner's mother's name.  Notably, at least according to petitioner, the affidavit was silent on the officer's knowledge of or belief in Ms. Walker's reliability of veracity as an informant.  The ensuing search of the trailer revealed the presence of marijuana, MDMA tablets, cocaine, GHB, steroids, and paraphernalia.  One of petitioner's contentions in this federal habeas action is that the search warrant affidavit that led to the search was constitutionally insufficient.

### The Burger King Case – Case No. 99-2483

Approximately three months later, in July of 1999, a confidential informant (CI) contacted law enforcement and indicated that he had been purchasing drugs from petitioner.  A controlled buy was set up, and petitioner came to an agreed location near a Burger King and sold drugs to the CI.  The CI also inquired as to whether petitioner could sell him marijuana, and petitioner said he could.  An issue later

---

[1]All references to exhibits are to doc. 18 unless otherwise noted.

[2]This apparently was not true; petitioner had prior drug convictions, but not eight.

arose concerning whether the sale took place within 1000 feet of a convenience store.[3]

### The Church Case – Case No. 99-2484

A week later, the same CI met petitioner by prearrangement in the parking lot of a theater and purchased cocaine from him.  The issue surrounding this transaction was whether it took place within 1000 feet of a church in violation of Florida law as the state charged.  Petitioner contends that the transaction was outside that distance but that his counsel failed to discover that fact, as will be discussed below.  Whether the sale was within 1000 feet of a church determines whether the crime was a first or second degree felony, and determines the maximum possible sentence as either 30 years or 15 years.

Petitioner was arrested on all three cases in September of 1999.  The state filed notices that petitioner may be eligible for habitualization in the Trailer Case and the Burger King Case under Fla. Stat. § 775.084 (ex. A, pp. 27-28).  The Church Case was set for trial on June 12, 2000.  Just before trial the state filed informations in the Burger King and the Church Cases (*id.*, pp. 70-71).  In the Burger King Case petitioner was charged with sale of cocaine, and in the Church Case he was charged with sale of cocaine within 1,000 feet of a place of worship (*id.*).  On June 12, a jury was selected for trial of the Church Case, with trial to commence the next morning. The next day, the state filed an information in the Trailer Case, charging petitioner with possession of cocaine, possession of MDMA, possession of steroids, and possession of drug paraphernalia (*id.*, pp. 68-69).  When everyone assembled for trial, the parties reached a plea agreement, which petitioner read, had read to him,

---

[3]According to defense counsel, the prosecutor told him at some point that he was going to file an amended information, charging that the Burger King sale took place within 200 (or 250) feet of a convenience store.  Whether that could have been proven was never determined.  In fact the statute makes it a first degree felony to sell drugs within <u>1000</u> feet of a convenience store, Fla. Stat. § 893.13(1)(e)1, so the 200 or 250 foot distance would actually work in petitioner's favor if the state limited itself to proving that distance.  Again, whether there was a convenience store near the Burger King is unknown, but the correct distance for elevating the crime from a second degree felony to a first degree felony was 1000 feet, which obviously gave the state a larger perimeter.

and signed.  It was a global deal providing that petitioner would plead no contest in all three cases and that he would not be habitualized.  All other conditions were to be set by the court.  There was a side agreement that the state would recommend a ten year sentence for all offenses, all concurrent, with the "understanding" that the judge generally followed the state's recommendation.  The court imposed the recommended sentence as expected.  In the Trailer Case, petitioner was sentenced to time served on the paraphernalia count and concurrent terms of five years' imprisonment on the remaining three counts (ex. A, pp. 82-94, 195).  In the Burger King Case, he was sentenced to ten years' imprisonment (*id*., pp. 90, 195).  Likewise, in the Church Case, he was sentenced to ten years' imprisonment (*id*., pp. 91, 194).  The sentencing court ordered all of the sentences to run concurrently (*id*., pp. 94, 194-95).

Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure, raising substantially the same claims that he raises in this federal action.  The Rule 3.850 court denied the motion after an evidentiary hearing (ex. A, pp. 306-307).  Petitioner now seeks federal habeas relief.  Respondent concedes that the petition is timely (doc. 11, p. 30), and that the claims raised here were properly exhausted in the state courts (doc. 11, pp. 33, 42).

## STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.  In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted

with respect to any claim that was adjudicated on the merits in State
court proceedings unless the adjudication of the claim–

>    (1) resulted in a decision that was contrary to, or involved
>    an unreasonable application of, clearly established
>    Federal law, as determined by the Supreme Court of the
>    United States; or
>    (2) resulted in a decision that was based on an
>    unreasonable determination of the facts in light of the
>    evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review
in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).  The
appropriate test was described by Justice O'Connor as follows:

>    In sum, § 2254(d)(1) places a new constraint on the power of a federal
>    habeas court to grant a state prisoner's application for a writ of habeas
>    corpus with respect to claims adjudicated on the merits in state court.
>    Under § 2254(d)(1), the writ may issue only if one of the following two
>    conditions is satisfied - the state court adjudication resulted in a
>    decision that (1) "was contrary to . . . clearly established Federal law,
>    as determined by the Supreme Court of the United States," or (2)
>    "involved an unreasonable application of . . . clearly established
>    Federal law, as determined by the Supreme Court of the United States."
>    Under the "contrary to" clause, a federal habeas court may grant the
>    writ if the state court arrives at a conclusion opposite to that reached
>    by this court on a question of law or if the state court decides a case
>    differently than this Court has on a set of materially indistinguishable
>    facts.  Under the "unreasonable application" clause, a federal habeas
>    court may grant the writ if the state court identifies the correct
>    governing legal principle from this Court's decisions but unreasonably
>    applies that principle to the facts of the prisoner's case.

120 S.Ct. at 1523 (O'Connor, J., concurring).  Under the test just described a habeas
court does not examine the State court's ruling to see if it is correct, but examines
it only to see if it is reasonable.  More recently, in *Lockyer v. Andrade*, 538 U.S. 63,
123 S.Ct. 1166, 155 L.Ed.2d 144 (2003), the Supreme Court instructed that, on any
issue raised in a federal habeas petition upon which there has been an adjudication
on the merits in a formal State court proceeding, the federal court should first

ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Id.*, 123 S.Ct. 1172. The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." *Neelley v. Nagle*, 138 F.3d 917, 923 (11th Cir. 1998).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Lockyer,* 123 S.Ct. at 1173 (quoting *Williams v. Taylor*, 529 U.S. at 405-06, 120 S.Ct. at 1519-20). The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases--indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 365, 154 L.Ed.2d 263 (2002) (quoting *Williams*, 529 U.S. at 405-06). If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases. The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." *Williams,* 529 U.S. at 409, 120 S.Ct. at 1521. Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. *Holland v. Jackson*, 542 U.S.

649, 652, 124 S.Ct. 2736, 2737-38, 159 L.Ed.2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697, n. 4, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001); *see also Carr v. Schofield*, 364 F.3d 1246, 1250 (11th Cir. 2004) (A state court decision involves an unreasonable application of clearly established Federal law if the State court decision "identifies the correct governing Supreme Court legal principle . . . but . . . 'refuses to extend the governing principle to a context in which the principle should have controlled.'" (quoting *Ramdass v. Angelone*, 530 U.S. 156, 166, 120 S.Ct. 2113, 2120, 147 L.Ed.2d 125 (2000))).

Section 2254(d)(1) requires more than mere error, and more even than clear error on the part of the State court before federal habeas relief may be issued.  *E.g., Mitchell v. Esparza*, 540 U.S. 12, 124 S.Ct. 7, 12, 157 L.Ed.2d 263 (2003) ("We may not grant respondent's habeas petition, however, if the state court simply erred. . . ."); *Lockyer, supra*, 538 U.S. at 75, 123 S.Ct. at 1175 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); *Early v. Packer*, 537 U.S. at 11, 123 S.Ct. at 366 (State court "decisions which are not 'contrary to' clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but 'an unreasonable application' of clearly established federal law. . . ."); *Williams, supra*, 529 U.S. at 410-12, 120 S.Ct. at 1522-23 (The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion.").

Only if the federal habeas court finds the State court decision to be contrary

to, or an unreasonable application of, clearly established Supreme Court law does it take the final step of conducting an independent review of the merits of the petitioner's claims. *Neelley*, 138 F.3d 917. Even so, the writ still will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 123 S.Ct. 1029, 1041, 154 L.Ed.2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Crawford v. Head*, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides for a "highly deferential standard of review" for factual determinations made by a state court); *Jackson*, 112 F.3d at 824-25 (noting that the new statute places a heavier burden on petitioner to overcome the presumption of factual correctness).

## PETITIONER'S GROUNDS FOR RELIEF

Petitioner makes two claims that contain mostly overlapping issues. His first claim is that his plea was involuntary because of errors of his counsel and the court. The errors of his counsel included: (1) erroneously advising petitioner that he could be sentenced as a habitual felony offender to 120 years of imprisonment in the

Burger King and Church Cases, (2) demanding a speedy trial against petitioner's request, (3) interviewing the CI via telephone without placing him under oath, and then panicking when the CI showed up unexpectedly at trial, (4) advising petitioner not to say anything that would anger the judge during the plea colloquy and telling him to "follow my lead", and (5) failing to investigate the distance from the subject drug deal to the church; and the alleged error of the court was failing to advise petitioner of the nature and number of the offenses to which he was pleading, as well as the maximum possible sentence for each offense (doc. 1, pp. 4, 4a-4r).  As his second claim, petitioner contends he received ineffective assistance of counsel based on the following errors:  (1) failure to advise petitioner that the search warrant in the Trailer Case was unconstitutional, therefore, the evidence seized was subject to suppression, (2) failure to investigate and determine that petitioner was not eligible for habitualization in the Trailer Case, and his sentence in that case could not exceed 16 years, (3) failure to advise petitioner that the maximum possible sentence in the Burger King case was 30 years (rather than 60 years), (4) failure to investigate the distance between the Church Case transaction and the church, which was in fact more then 1000 feet, and (5) erroneously advising petitioner that he could be sentenced to a total of 120 years in the Burger King and Church Cases (doc. 1, pp. 4s-4t).  Both claims challenge the voluntariness of the plea as petitioner claims that "but for Pell's [counsel's] above stated errors, he [petitioner] would not have pleaded nolo contendere and would have insisted on going to trial in all three (3) of the cases." (doc. 1, p. 4t, 4cc, 4ee).  Furthermore, with the exception of petitioner's claim that the court failed to advise him concerning each of the offenses and their respective sentences, all of petitioner's accusations relate to counsel's alleged deficiencies.   Accordingly, this court will first address the voluntariness of petitioner's plea in relation to his ineffective assistance of counsel claims.

**A.      Clearly Established Supreme Court Law**

The test for determining the validity of a guilty plea is whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to a defendant.  *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970) (citing *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969)). A plea of guilty is not considered knowing and voluntary unless the accused is reasonably informed of the nature of the charge against him, the factual basis underlying the charge, and the legal options and alternatives that are available.  *See Henderson v. Morgan*, 426 U.S. 637, 645, 96 S.Ct. 2253, 2258, 49 L.Ed.2d 108 (1976); *Stano v. Dugger*, 921 F.2d 1125, 1142 (11th Cir. 1991) (citations omitted).   "A plea may be involuntary either because the accused does not understand the nature of the constitutional protections that he is waiving or because he has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt.  Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this latter sense."  *Morgan*, 462 U.S. at 645 n. 13, 96 S.Ct. at 2257 n.13 (citation omitted); *Boykin*, 395 U.S. at 243 & n.5, 89 S.Ct. at 1712 & n.5.  "A defendant receives 'real notice' of the charge when he has been informed of both the nature of the charge to which he is pleading guilty and its elements."  *Gaddy v. Linahan*, 780 F.2d 935, 943 (11th Cir. 1986) (quoting *Morgan*, 426 U.S. at 645-47).  The extent to which the elements must be explained varies with the circumstances, but at the very least, due process requires that the defendant receive a description of the "critical elements" of the charged offense, such as the element defining the requisite intent. *Gaddy*, 780 F.2d at 944-45 (citing *Morgan*, 426 U.S. at 644, 647 n.18).  Additionally, the accused should understand how his conduct satisfies the elements of the charge, and this entails that the accused have sufficient background information about the facts of his case to make an informed decision about the case against him.  *Id.*, at 944-45.

When a defendant challenges his plea based upon allegations of ineffective assistance of counsel, the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), applies.[4]  *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).  To obtain relief under *Strickland*, Petitioner must establish: (1) that his counsel's representation "fell below an objective standard of reasonableness," and (2) that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.  466 U.S. at 688, 104 S.Ct. at 2064, 2068.

The focus of inquiry under the performance prong of the *Strickland* standard is whether counsel's assistance was "reasonable considering all the circumstances."  *Id.*  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.* at 689.

To succeed on an ineffective assistance claim, Petitioner must rebut a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Strickland*, 466 U.S. at 690; *see also Smith v. Singletary*, 170 F.3d 1051, 1053 (11th Cir. 1999); *Harich v. Dugger*, 844 F.2d 1464, 1469 (11th Cir. 1988); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  Indeed, Petitioner must demonstrate that counsel committed "serious derelictions" of his duty.  *Stano v. Dugger*, 921 F.2d 1125, 1150-51 (11th Cir. 1991).  "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious

---

[4]The court rejects petitioner's contention that the applicable Supreme Court standard is the "presumed prejudice" standard set forth in *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) as petitioner's allegations regarding counsel's performance do not rise to the magnitude of a complete denial of counsel.

choice between accepting the prosecution's offer and going to trial." *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam).   An attorney's responsibility is to investigate and to evaluate his client's options in the course of the subject legal proceedings and then to advise the client as to the merits of each. *Stano*, 921 F.2d at 1152 (citations omitted).

The second prong of the *Strickland* analysis requires Petitioner to show that he was prejudiced as a result of counsel's deficient performance.   To satisfy this element, Petitioner must come forth with objective evidence showing a reasonable probability that but for counsel's errors, he would not have accepted the plea offer and would have insisted on going to trial.  Conclusory, after-the-fact statements do not meet this requirement.  *See United States v. Gordon*, 156 F.3d 376, 380-81 (2d Cir. 1998); *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir. 1991); *Key v. United States*, 806 F.2d 133, 139 (7th Cir. 1987); *United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993).

B.    Federal Review of State Court Decision

1.    Ineffective assistance of counsel

After an evidentiary hearing on petitioner's Rule 3.850 motion, at which petitioner was represented by appointed counsel, the state court made the following relevant factual findings, as set forth in its written order:

1.    On the day trial of the Church Case was to commence, the CI appeared, which caused petitioner to approach his counsel and ask about the possibility of a plea agreement.   Counsel discussed the possibility with the state, and a deal was reached for a plea, with the only concessions being that the state would not seek to habitualize, and would recommend a ten year sentence.

2.    Counsel did not encourage petitioner to plead against his will.

3.    Counsel was ready and prepared for trial.  It was only when the CI appeared that petitioner decided to avoid a jury trial.

      **4.**     **Petitioner did not enter his plea to avoid the possibility of habitualization, but did so because he was afraid to go to trial when the CI actually showed up in court, and any deficient performance on counsel's part, if there was any such deficient performance, did not go to the "core" of the plea, thus, petitioner was not prejudiced.**

**(ex. A, pp. 306-307).  The written decision of the Rule 3.850 court did not individually address petitioner's claims and focused on the claims relating to habitualization. In the interest of completeness, the undersigned will address the claims relating to habitualization first and then deal with petitioner's remaining claims.**

      **a.**     **<u>Erroneously advising petitioner regarding habitualization.</u>[5]**

      **Petitioner claims that he pleaded only to avoid the possibility of being habitualized, because his attorney told him that the state wanted to habitualize him and filed the requisite notice, and that he was therefore looking at a possible 120 year sentence.  He also claims that counsel failed to investigate and determine that petitioner was not eligible for habitualization in the Trailer Case and that his sentence in that case could not exceed 16 years.  Additionally, he claims that counsel erroneously advised him that the maximum possible sentence in the Burger King Case was 60 years, but it was actually 30 years.**

      **In April 2000 counsel wrote petitioner a letter confirming that he had rejected the state's offer of two years community control followed by ten years probation. Counsel pointed out that petitioner had been told, and knew, that he faced 120 years if convicted in both the Burger King and Church Cases, and that after rejection of the state's offer, all offers were "off the table."  Counsel noted that the Burger King and Church Cases would be "extremely difficult to win" if the state's key witness showed up for trial, and further that while the Trailer Case was "triable," there was no**

---

      [5]**For organizational purposes, the court has consolidated the following claims regarding counsel's advice concerning habitualization, as petitioner did in his traverse (*see* doc. 18, pp. 42-54):  (1) counsel erroneously advised petitioner that he faced 120 years if convicted in both the Burger King and Church Cases; (2) counsel failed to investigate and determine that petitioner was not eligible for habitualization in the Trailer Case and that his sentence in that case could not exceed 16 years, and (3) counsel erroneously advised him regarding the maximum sentence he could receive in the Burger King Case.**

guarantee of a favorable verdict (ex. A, pp. 115-116).  At the Rule 3.850 hearing, counsel testified that in his conversations with petitioner about maximum possible sentences, he couched the discussions in terms of worst possible scenarios (*id.*, pp. 377-78).

Petitioner contends that his counsel repeatedly emphasized that he was looking at 120 years.  Petitioner testified at the Rule 3.850 hearing that it was only when the CI appeared at trial to testify and *his attorney panicked because he was unprepared for trial* that petitioner agreed to plead guilty.  Whether petitioner was actually eligible for habitualization was never settled.  At the Rule 3.850 hearing counsel stated that he did not believe there was a legal basis to habitualize petitioner but stood by his position that *the state* had not conceded the point, and the court had never ruled on it (ex. A, pp. 346-48, 375-77).  Therefore, even in hindsight, the possibility of habitualization was still present absent a plea.

As noted above, the Rule 3.850 court addressed the habitualization claims and found, as fact, that upon seeing the CI in court on the day of trial, petitioner panicked (after repeatedly telling his attorney prior to trial that he was *sure* the CI would not appear), and he pleaded because he was afraid to go to trial, not to avoid the possibility of habitualization.  Based upon these facts, the Rule 3.850 court concluded that petitioner failed to establish that he was prejudiced by counsel's alleged misadvice regarding the possibility of habitualization.  The record fully supports the Rule 3.850 court's factual findings.  Petitioner cannot show he was prejudiced by counsel's alleged error regardless of whether counsel had a well-founded belief that habitualization was likely.  Petitioner had every reason to plead to a ten year sentence, since he was facing a 30 year sentence in the Church Case alone if he lost at trial.

What really proves that petitioner changed his plea without regard to a possible 120 year sentence is his rejection of several favorable offers.  By his own admission he rejected an offer of two years community control and 10 years

probation when he had been told he was looking at a possible 120 year sentence (ex. A, p. 115).  Later, he was offered the choice of (1) 22 months in the county jail (with 50% gain time) plus ten years probation, which would terminate in five years, (2) 30 months in the state prison plus 10 years probation, or (3) five years in the state prison with no probation to follow (doc. 1, p. 14).  "Petitioner again told [counsel] that he wanted to go to trial and that he was not interested in any plea offers."  *Id*. Nothing changed from that date until trial, other than the CI's failure to appear for deposition, yet petitioner says he suddenly entered a plea because his counsel was unprepared.  If petitioner indeed pleaded guilty to avoid a 120 year sentence, as he now claims, he would have accepted the earlier more favorable offers.  The truth is, as the state court found, he banked on the CI's failure to appear for trial.

In sum, counsel was prepared for trial, and petitioner entered his plea because the CI appeared.  Petitioner was aware (possibly incorrectly) that he was looking at 120 years when he rejected four very favorable plea offers because he was "not interested."  He was not interested because, as he told his attorney, the CI would not show up at trial (*see* Ex. A, pp. 385-86).  Why he thought so the record does not show, except for the fact that the CI failed to appear to three scheduled depositions. What the record does show is that the CI appeared and petitioner panicked, as the Rule 3.850 court found (*id*., pp. 315, 386-88).  Petitioner agreed to plead because he knew he would be found guilty.

As to petitioner's claim that his counsel failed to determine that petitioner was not eligible for habitualization in the Trailer Case and that his sentence in that case could not exceed 16 years, petitioner's counsel conceded at the Rule 3.850 hearing that he may have erroneously told petitioner he could be habitualized and sentenced to 45 years (ex. A, p. 355).  Likewise, as to petitioner's claim that his counsel erroneously advised him that the maximum possible sentence in the Burger King Case was 60 years when it was actually 30 years, it is true that a second degree felony is a fifteen year felony, and even if petitioner were habitualized the maximum

would be 30 years.  Fla. Stat. § 775.084.  However, petitioner was correctly advised of the correct maximum penalty when it counted - in the written plea agreement. The plea agreement listed every pending charge in all three cases, and correctly set out the maximum possible penalty for each charge.   Three of the charges arising from the Trailer Case are clearly shown as third degree felonies with 5 year maximums, and the fourth charge is clearly shown as a first degree misdemeanor with a one year maximum (ex. A, p. 75).  The sale of cocaine charge arising from the Burger King Case is clearly shown as a second degree felony with a 15 year maximum (*id.*).  By signing the plea agreement petitioner acknowledged that he had read it, that he understood it, and that he had been given sufficient time to discuss the matter with his attorney (*id*).  He confirmed the same to the court during the plea colloquy (*id.*, pp. 184-189).   Further, defense counsel testified at the Rule 3.850 hearing that he "read every word" of the plea agreement to petitioner (*id.*, p. 391).

A criminal defendant is entitled to know the nature of the charges he faces, and the possible penalties.  However, there is no particular formula for when or how he must be so informed.   The correct information may come during or before the plea colloquy.  *Loconte v. Dugger*, 847 F.2d 745, 751 (11th Cir. 1988) (holding that a plea may be knowingly and intelligently made on the basis of detailed information received before the plea hearing).  Petitioner received the correct information in the plea agreement, which he acknowledged under oath that he had read and understood.

Petitioner's claim here fails for another reason.  The state informed counsel that if petitioner "was going to dig in his heels," it intended to file an amended information in the Burger King Case, which had not yet been set for trial, to allege that the transaction took place within 200 feet (or 1000 feet, see fn.2, *supra*) of a convenience store (ex. A, p. 350).  This would have raised the offense to a first degree felony with a 30 year maximum.  Fla. Stat. § 893.13(1)(e)1.  Whether there was a convenience store within 200 feet or 1000 feet was never determined since that

case was not being tried, but counsel was giving the petitioner his advice on the worst case scenario.  It is easy to now say that counsel should have investigated the particulars of the Burger King and Trailer Cases, but it was the Church Case that was being tried, and the state was offering a take-it-or-leave-it package deal, not because counsel had not done his homework, but because petitioner had rejected earlier favorable offers, which were now off the table.

By the time the plea agreement was signed, petitioner knew well that the maximum he faced was 61 years, that he would not be habitualized, and that the state would recommend ten years, which everyone had reason to expect would be the ultimate sentence imposed by the judge, and it was.  And, as counsel told petitioner, even if he was convicted of only one second degree felony, a virtual certainty in both the Church Case and the Burger King Case, he would most likely receive a fifteen year sentence for each (ex. A, p. 378).  Petitioner denied knowing about the ten year part of the plea deal and claims he was ready to go to trial until he realized his attorney was not ready (ex. A, p. 429), but the Rule 3.850 court disbelieved petitioner and found that he pleaded because he was panicked when the CI appeared, and that counsel was indeed ready for trial (ex. A, pp. 306-307).  Thus, petitioner cannot establish a reasonable probability that he would not have pleaded if counsel had  provided correct information regarding the maximum sentences he could face.

In sum, the state court's ruling did not result "in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d) (1); *Williams, supra*.  Petitioner is therefore not entitled to federal habeas relief on his claims regarding counsel's alleged errors concerning habitualization.

   b. <u>Filing demand for speedy trial without petitioner's consent.</u>

Petitioner also contends that counsel performed deficiently by demanding a speedy trial in the Church Case contrary to petitioner's request, and that petitioner

really wanted a continuance.  Counsel told him that because he had made a speedy trial demand (at petitioner's request, according to counsel), no continuance would be granted.  Petitioner states that the fact that the Church Case trial could not have been continued was a factor in forcing him into an involuntary plea.

Petitioner bases his need for a continuance on his insistence that this attorney was unprepared for trial.  He complains that counsel did not depose the CI, which is technically true.  Additionally, he complains that counsel did not investigate whether the church was actually within 1,000 feet of where the sale took place.

The Rule 3.850 court found as fact that defense counsel was ready and willing to go to trial.  Furthermore, petitioner failed to demonstrate a reasonable probability that a deposition of the CI and an investigation into the distance between the church and the drug transaction would have resulted in evidence favorable to him.

As to the deposition, petitioner concedes that defense counsel had scheduled the CI's deposition on three occasions, but the CI failed to appear each time (doc. 1, p. 4h n.2).  At the Rule 3.850 hearing, defense counsel testified that he talked to the CI on the telephone on the Friday before trial, and was not pleased with what the CI told him (ex. A, p. 372).  Defense counsel further testified that the prosecutor and a court reporter were present with defense counsel during the telephone conversation, but the court reporter could not place the CI under oath because the reporter was not physically present with the CI (id.).  Defense counsel testified that even though he could not technically impeach the CI's trial testimony with statements made during the telephone conversation, he was confident that he would have been permitted to explore any inconsistencies during trial and that the prosecutor would have supported his effort to do so (id., p. 373).

Counsel's failure to take the CI's deposition is a red herring.  The only way petitioner's position would be supportable is if this court were to speculate that the CI would have testified under oath at deposition that petitioner was innocent, or that the sale took place more than 1000 feet from the church (which will be further

discussed below), and then would have changed his testimony at trial, making him vulnerable to impeachment.  However, there is absolutely no factual support in the record or otherwise to support this argument; it is based completely on speculation. This court will not "'blindly accept speculative and inconcrete claims . . . .'" *Raulerson v. Wainwright*, 753 F.2d 869, 876 (11th Cir. 1985) (quoting *Baldwin v. Blackburn*, 653f2d942, 947 (5th Cir. 1981)).  Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value. *Woodard v. Beto*, 447 F.2d 103 (5th Cir. 1971).[6]  Petitioner has not shown, and cannot show, that counsel's failure to take the CI's deposition prejudiced him, and therefore cannot show that there is a reasonable probability that additional time to depose the CI would have benefitted him.

As to the distance between the church and the place of the sale, at the Rule 3.850 hearing a land surveyor, Al Tuzinkiewicz, testified that he measured the distance from the "old" church, as well as the "new" church, to a point identified by petitioner and/or his mother, and the distances were 1170 feet and 1250 feet, respectively (ex. A, pp. 397-400).  However, Mr. Tuzinkiewicz admitted that if the point of sale was at a place in the parking lot different than the point identified by petitioner or his mother, the distance would have been different (*id.*, pp. 401-03). Additionally, Deputy Bagwell testified at the Rule 3.850 hearing that he, Investigator Robert Duncan, the prosecutor, and the CI went to the site of the drug transaction and determined that the distance to the door of the church was 977.528 feet (*id.*, pp. 411-15).  He also testified that the location of the drug transaction used by the surveyor in his measurement was not accurate (*id.*, p. 413).  Mr. Tuzinkiewicz's testimony depends on *his* version of where the transaction took place, and he can

---

[6]Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

only have received this information from petitioner.  This means petitioner would have to testify in order to locate the site in order to lay the foundation for Mr. Tuzinkiewicz's testimony.  Petitioner has not indicated that he was ever willing to go so far.  The state would have presented the testimony of the CI and an officer on the transaction site.  Thus, petitioner has not shown, and cannot show, that there is a reasonable probability that if counsel had additional time to investigate the distance, the investigation would have yielded evidence favorable to petitioner.

As petitioner has failed to demonstrate that he was prejudiced by counsel's demand for speedy trial and his resulting inability to get a continuance, he is not entitled to federal habeas relief on this claim.

c.    Failure to prepare for trial and panic when the CI appeared.

This issue is covered by the previous discussion of petitioner's first two claims.  The trial court found, contrary to petitioner's contentions here, that counsel was fully prepared for trial, and that it was petitioner, not counsel, who panicked when the CI showed up.  Furthermore, petitioner has failed to show that additional preparation by counsel would have benefitted him.  Therefore, petitioner has failed to establish a reasonable probability that he would not have pleaded if counsel had engaged in additional preparation for trial.  Accordingly, he is not entitled to federal habeas relief on this issue.

d.    Instructing petitioner regarding plea colloquy.

Petitioner says that his attorney "admonished Petitioner not to say or do anything that would 'make the judge mad' and instructed Petitioner to 'follow [his] lead' when addressing the court." (doc. 1, p. 47).  Fearing that he might anger the judge with wrong answers, petitioner states he decided to do as his attorney instructed.  *Id.*  He then, according to his current version of the events, lied under oath to the judge when he told the court, in response to the court's inquiries, that he wanted to plead straight-up, that there were no side deals, that he was satisfied with the services of his attorney, that he had read and understood the plea form, that his

lawyer had not told him anything that was not being disclosed in open court, and that he fully understood what was happening (ex. A, pp. 184-186).

Petitioner's sworn testimony at the plea colloquy is presumed to be truthful. "In analyzing the constitutionality of a guilty plea, a reviewing court must determine that the plea represents 'a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Jones v. White*, 992 F.2d 1548, 1556 (11th Cir. 1993)(quoting *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 136 (1977). Additionally, the Supreme Court has determined that "the representations of the defendant ... [at a plea proceeding] as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977). They are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise. *Id*. An after the fact recantation of petitioner's testimony at the change of plea hearing, without more, is insufficient to raise a viable claim of ineffective assistance of counsel. In the instant case, petitioner has offered nothing more than his after the fact recantation, thus, he is not entitled to relief on this claim.

      e.     <u>Failure to investigate the distance from the site of the drug transaction to the church in the Church Case.</u>

Petitioner was charged with selling cocaine within 1000 feet of a place of worship, a first degree felony carrying a maximum punishment of thirty years in prison. Fla. Stat. § 893.13(1)(e)1. If the transaction took place more than 1000 feet from the church, the crime was a second degree felony, with a 15 year maximum. Fla. Stat. § 893(1)(a)1. Petitioner contends that he was more than 1000 feet from the church. As previously discussed, petitioner offered the Rule 3.850 court the testimony of a surveyor, who stated that the distance was at least 1170 feet. However, the surveyor admitted that he made his measurements based on information provided by petitioner or his mother regarding the location of the

transaction.  The surveyor admitted he had no knowledge of the actual site of the drug transaction (ex. A, pp. 397-402).

Counsel testified that he had discussed this matter in detail with the state, which contended that the actual distance was just over 977 feet (ex. A, pp. 362-63). The state planned to prove the distance by triangulation with a videotape of the transaction and the testimony of officers who were shown the exact spot by the CI, plus the testimony of the CI, who could confirm it (*id.*, pp. 362-363, 402-406). Counsel thought the state's case was weak in that regard, but still thought that a conviction (within 1000 feet) was likely.  He also felt that a conviction of a second degree felony and possible 15 year sentence (more than 1000 feet) was assured, since there was really no question that the state could prove the sale, once the CI appeared at trial.

Counsel believed that the 10 year deal was clearly in petitioner's best interest (ex. A, p. 371).  Not only was petitioner looking at a guaranteed conviction on the Church Case, even if the jury found that it was outside 1000 feet, but petitioner had yet to be tried in the Burger King Case, which was practically a guaranteed second degree felony (15 year) conviction, nor had he yet been tried on the Trailer Case, which involved three third degree (5 year) felonies (possession of cocaine, MDMA and steroids) and a first degree (one year) misdemeanor (possession of paraphernalia).  If petitioner was convicted on any charge, given his record, and given counsel's eleven years experience as a defense lawyer and his knowledge of the court's past practice of following the state's sentence recommendations (*see* ex. A, pp. 365, 383), he felt that petitioner would get the maximum in terms of punishment (*id.*, p. 383).  That meant petitioner was looking at an almost guaranteed 15 year best case sentence on the Church Case, or 30 year worst case, each doubled if petitioner was habitualized, with the Burger King Case (15 years) and the Trailer Case (16 years) yet to be resolved.  Counsel thought the latter case was "triable," but given the uncertainties involved in all the cases, and the very likely unfavorable

results overall, counsel felt that a 10 year package deal was a good one (ex. A, pp. 378-382).

Clearly it was.  Indeed, the Supreme Court warned about second-guessing professional judgments made by counsel in these circumstances:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments.  All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court.  Even then the truth will often be in dispute.  In the face of  unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case.  Counsel must predict how the  facts, as he understands them, would be viewed by a court. . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be.  Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.  *That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.*

*McMann v. Richardson*, 397 U.S. 759, 769-70, 90 S.Ct. 1441, 1448, 25 L.Ed.2d 763 (1970) (emphasis added).  Petitioner failed to show that counsel's alleged failure to "fully investigate" the distance from the site of the sale to the church was prejudicial, even if counsel's performance was deficient, which the court does not find.  Therefore, petitioner is not entitled to federal habeas relief on this claim.

> f.      Failure to challenge the search warrant in the Trailer Case.

Petitioner also faults his counsel for not filing a motion to suppress in the Trailer Case.  He contends that the underlying affidavit was insufficient to support a finding of probable cause because the only witness relied on by the officer was not identified as a reliable or known witness.  She was identified only as someone who was arrested, and then cooperated by telling law enforcement where she obtained the drugs, and that she had been there several times.  Based on the affidavit, a

warrant was issued, and petitioner's trailer was searched, resulting in the charges in the Trailer Case.

This issue was discussed at the evidentiary hearing in the Rule 3.850 proceeding (ex. A, pp. 365-70, 381-82).  The Rule 3.850 court did not make any specific findings of fact on this issue in its written decision.  Nevertheless, the claim is meritless.

"To obtain relief where an ineffective assistance of counsel claim is based on counsel's failure to file a timely motion to suppress, a petitioner must prove (1) that counsel's representation fell below an objective standard of reasonableness, (2) that the Fourth Amendment claim is meritorious, and (3) that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Zakrzewski v. McDonough*, __ F.3d __, 2006WL1911328 (11th Cir. July 13, 2006), citing *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 2582-83, 91 L.Ed.2d 305 (1986).

In the instant case, it is not necessary to consider the second or third prongs of the three-prong test, because petitioner has failed to establish that defense counsel's representation was unreasonable.  At the evidentiary hearing in the Rule 3.850 proceeding, defense counsel explained that only one case - the Church Case - was set to be tried when petitioner decided to plead (ex. A, pp. 366-67, 381-82).  The Trailer Case was on the back burner since the state was not moving it, and counsel was directing his efforts toward the case that was actually being tried (*id.*, p. 369).  Counsel testified that had the Trailer Case become active he certainly would have researched the matter and filed a motion to suppress if he thought it advisable (*id.*, p. 368).  He had already told the petitioner that the Trailer Case was "triable," and he obviously had a motion to suppress in mind, because there was no defense to the charges if the warrant was valid.  However, since petitioner decided to plead as he did, and since the state presented the defendant with a take-it-or-leave-it package deal, counsel felt it was in petitioner's best interest to take the deal (*id.*, 366-67, 380-

81, 388).  **Petitioner told counsel that he thought so as well (*id.*, p. 393).  Petitioner has failed to demonstrate that counsel's focusing on the Church Case, the case being tried, and advising petitioner to plead in the Trailer Case despite having not investigated the suppression issue, was unreasonable.  Therefore, petitioner is not entitled to federal habeas relief on this claim.**

**In sum, petitioner failed to show that the state court decision denying his ineffective assistance of counsel claims with regard to habitualization was based upon an unreasonable determination of the facts or was contrary to, or involved an unreasonable application of, clearly established Federal law.  As to petitioner's remaining ineffective assistance claims, he has failed to satisfy the *Strickland* standard.  Therefore, petitioner is not entitled to federal habeas relief on these claims.**

**2.    Trial court error**

**Buried in petitioner's rambling accusations against his attorney is a statement that the trial court incorrectly told him that he faced a possible 70 year sentence, then incorrectly raised the possible maximum to 75 years, and the court failed to advise him of the nature or number of the offenses to which he was pleading (ex. A, p. 4r).  Petitioner claims that his plea was uninformed and involuntary as a result (*id.*).**

**The state court record conclusively demonstrates that before entering his plea petitioner reviewed and signed a Plea, Waiver and Consent agreement (ex. A, pp.75-76).  The plea agreement correctly identified the nature of each of the pending charges, the degree of each offense, and the maximum penalty for each offense, and it correctly showed that the maximum sentences, if imposed consecutively, totaled 61 years.  During the plea hearing, the court referenced a computer generated score sheet that showed a maximum possible sentence of 70 years (*id.*, pp. 77-78).  During the colloquy, the court stated, erroneously, that petitioner was charged with five third degree felonies so the correct total of the possible maximum sentences would**

be 75 years (*id.* at 187).[7]  Defense counsel did not object.  Based on these errors and the resulting confusion, petitioner asserts he did not know what the maximum possible penalty was, and because he had the right to be given the correct figures, his plea was involuntary.

Respondent has two responses to this claim.  First, he says that the claim is facially insufficient.  Although petitioner argues his facts at great length, he has failed to include the most critical requirement - a statement that had he been told of the correct maximum sentence, whether it be 61, 70 or 75 years, he would not have accepted the plea and would instead have gone to trial.  It is true that petitioner did not make this statement under his first ground, but he did make it in the second (doc. 1, p. 4cc).  Because of the marked overlap in petitioner's various accusations in his two claims, the court will give him the benefit of the doubt here.  Nevertheless, he is not entitled to relief on the merits.

Fla. R. Crim. P. 3.172(c)(1), and more importantly the Due Process Clause, provides that a court must, before accepting a guilty or nolo contendere plea, determine that the defendant understands the maximum possible penalty he faces.  Here the plea agreement and the score sheet did not agree, and the court complicated the picture by raising the possible sentence from 70 to 75 years.  The problem with petitioner's claim is that he turns any possible due process violation on its head.  By signing the plea agreement, he indicated his intent and desire to plead to a possible maximum sentence of 61 years.  When the court indicated that the score sheet showed 70 years, but that it should have been 75 years, petitioner was immediately on notice that the situation had changed.  However, he said nothing.  He gave no indication that the possible increased sentence in any way affected his decision to plead, nor did he tell the court or his lawyer that the change

---

[7]The court's belief may hae been based on the fact that the affidavit/complaint in the Trailer Case listed five offenses, the fifth being possession of GHB (ex. A, p. 2).  At the end of the plea colloquy, the prosecutor announced a "no information" on the GHB offense and subsequently filed a written notice documenting the "no information" (*id.*, pp. 196,98).

in the maximum possible penalty gave him any concern.  In fact, even after the court's misstatement, petitioner responded affirmatively when the court asked him if he felt the plea was in his best interest even though he was pleading "straight up" and did not know what his ultimate sentence would be (ex. A, p. 189).  Petitioner's after the fact allegation that he would not have pleaded if he had known that his possible sentence was 75 years is insufficient to demonstrate that his plea was unknowing or involuntary.  Furthermore, both the plea agreement and the prosecutor identified the nature of each charge (ex. A, pp. 75, 188-89); therefore, the fact that the trial court failed to do so during the plea colloquy does not render the plea unintelligent or involuntary.

## CONCLUSION

Petitioner has presented this court with scattershot accusations of ineffective assistance of counsel mixed with complaints that the court complicated counsel's error, all resulting in a deprivation of due process and his right to constitutionally effective counsel.  In all regards, petitioner has failed to show he suffered a deprivation of his constitutional rights.  What petitioner glibly and repeatedly overlooks is the truth: he was bound to be convicted of at minimum two second degree felonies because any defense he had fell apart when the CI appeared for trial of the Church Case.  His counsel told him, as he was professionally required to do, that a conviction on the lesser offense in either case was practically a guarantee of a 15 year sentence given petitioner's criminal record and counsel's knowledge of the court's usual practice.  Instead of criticizing his attorney, he should be thanking him, and in particular he should be thanking the state for giving him such a good deal when he was for all intents and purposes down for the count.  His claim that counsel was not ready for trial is a bald assertion, completely devoid of any factual support.  Petitioner took a favorable deal that miraculously (for him) appeared after he had unwisely rejected much more favorable offers based on his sure but incorrect "knowledge" that the CI would not appear at trial.

Accordingly, it is respectfully **RECOMMENDED** that the Title 28 U.S.C. § 2254 petition for writ of habeas corpus (doc. 1), challenging the conviction and sentence in *State of Florida v. Vincent Barbieri* in the Circuit Court of Bay County, Florida, case nos. 99-2482, 99-2483, 99-2484, be **DENIED**, that this cause be **DISMISSED**, and that the clerk be directed to close the file.

At Pensacola, Florida, this 31st day of July, 2006.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO PARTIES

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**